**UNITED STATES of America, Appellant,**

v.

**HOUSING AUTHORITY OF the CITY OF BREMERTON, a Public Body Politic and Corporate, Appellee.**

**No. 22611.**

United States Court of Appeals Ninth Circuit.

Aug. 4, 1969.

---

**240**

Stephen R. Felson (argued), Edwin L. Weisl, Jr., Asst.Atty.Gen., Morton Hollander, Daniel Joseph, Attys., Washington, D. C., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for appellant.

John A. Roberts, Jr., (argued) of Hullin, Ehrlichman, Roberts & Hodger, Seattle, Wash., for appellee.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

HAMLIN, Circuit Judge.

The United States instituted this suit in the district court pursuant to the Medical Care Recovery Act, 42 U.S.C. § 2651. In the suit the United States sought to recover for the value of medical care furnished by it to the infant daughter of an enlisted man in the Navy. The district court, holding that the United States should have sought recovery by intervening in a prior suit brought on behalf of the daughter against the Housing Authority, dismissed the action. It is from this dismissal that the United States appeals, under 28 U.S.C. § 1291. We reverse.

Carrie Thomas, an 18-month old infant, was severely burned when she opened a hot water faucet in her home. The home was located in a housing project under the control of the Housing Authority of Bremerton, Washington. Because she was the infant daughter of an enlisted man on active duty in the Navy, the United States was required by law to furnish, and did furnish, hospital and medical care to the child. In September, 1963, the daughter, by her father, brought suit against the Housing Authority. The United States, although it had notice of the suit, took no steps to intervene. A jury determined that the accident had been caused by the negligence of the Housing Authority, and rendered damages in favor of the daughter which explicitly did not include any amount for medical or hospital expenses. In September, 1965, the United States filed the instant action to recover for the value of the hospital and medical expenses, stipulated by the parties to amount to $3275.00. The Housing Authority contends that the United States is barred from recovery because of its failure to intervene in the prior suit. Additionally, it urges that should the suit be permitted, the case should be remanded to the district court to permit the Housing Authority to show that the parents had been con-

tributorily negligent, and that their negligence bars recovery by the United States.[1]

42 U.S.C. § 2651(a) states the basic right of the United States to recover for medical services rendered under the circumstances of this case:

> "In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment * * * to a person who is injured * * * under circumstances creating a tort liability upon some third person * * * to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished * * * and shall, as to this right be subrogated to any right or claim that the injured or diseased person * * has against such third person to the extent of the reasonable value of the care and treatment so furnished * * *."

All courts which have considered the question have agreed that the statute gives the United States an independent right of recovery against the tortfeasor; the United States is not merely subrogated to the injured party's claim. *E. g.,* United States v. York, 398 F.2d 582 (6th Cir. 1968); United States v. Merrigan, 389 F.2d 21 (3rd Cir. 1968); United States v. Wittrock, 268 F.Supp. 325 (E.D.Pa.1967).

The issue which has created some uncertainty under the Medical Care Recovery Act is the method by which the United States may enforce this independent right. The enforcement provision, section 2651(b), states:

> "The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person * * against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury * * * involved, institute and prosecute legal proceedings against the third person who is liable for the injury * * *."

Thus, the statute authorizes the United States to enforce its independent right either by intervention in a suit brought by the injured party, or on its own if no such action is brought for six months. But the statute is silent on the situation involved in the instant case; the injured person did institute a legal action against the tortfeasor within six months, but the United States did not intervene. However, since the decision of the district court in this case, two Circuits have decided that the United States may bring an independent action against the tortfeasor despite its failure to intervene. *York, supra; Merrigan, supra.*

We agree that the United States may maintain this suit against the Housing Authority, following the reasoning of the *York* and *Merrigan* courts. The key to the interpretation of section 2651 (b) is that it is phrased in permissive, rather than mandatory, terms. It states that the United States *may* intervene in an action brought by the injured party against the tortfeasor. Especially since section (a) gives the United States an independent right of recovery, such permissive language cannot be read as meaning that it is the exclusive method by which the United States may enforce its right. "When a specific interest and right has been conferred upon the United States by statute, the remedies and procedures for enforcing that right are not to be narrowly construed so as to prevent the effectuation of the policy declared by Congress." United States v. York, *supra,* 398 F.2d

---

1. The issue of the parents' alleged contributory negligence did not arise in the prior suit, since as a matter of Washington state law the negligence of a parent may not be imputed to a child.

at 586. Thus, even where a suit is brought by the injured party within six months and the United States does not intervene, the language of section 2651(b) does not prevent the United States from instituting its own suit.

This conclusion is buttressed by further considerations. As noted by the court in *Merrigan, supra,* nothing in the Act requires that the injured person give the United States notice of his suit against the tortfeasor. Here the United States did in fact receive notice of the injured infant's suit shortly before her case went to trial. However, if the United States were required to intervene at the risk of forfeiting its right, surely Congress would have required that the United States be given notice.

Furthermore, this interpretation casts only a slight additional burden of multiple litigation upon a tortfeasor. Multiple litigation can occur even under the Housing Authority's reading of the Act. For example, suppose that six months pass without the injured person having brought suit. The United States clearly may then sue the tortfeasor and recover its medical expenses. Nothing in the Act prohibits the injured person himself from then suing the tortfeasor for his injuries in a separate action. Secondly, since medical expenses will generally be easily ascertainable, any added burden of multiple litigation would appear to be very slight.

The six-months provision of section 2651(b) is apparently designed to give the injured person the opportunity to bring his action first. See *York, supra,* 398 F.2d at 586 n. 8. The United States may sue any time after six months have elapsed, subject only to the federal statute of limitations,[2] even though the injured party has already brought suit. This interpretation is the more consistent with the United States' independent right of recovery, and with the permissive language of section 2651(b).

The remaining issue is whether the defense of alleged contributory negligence of the parents is available to the Housing Authority against the United States. This question is apparently one of first impression, and we hold that the defense of contributory negligence is not available under the circumstances of this case.

Since the United States is suing directly under a statute of Congress, courts cannot imply any conditions other than those stated in the statute. For example, where the injured person gives a release to the tortfeasor, the United States may bring suit for the value of medical services notwithstanding the release. United States v. Winter, 275 F.Supp. 895 (E.D.Pa.1967); United States v. Greene, 266 F.Supp. 976 (N.D. Ill.1967). And a state's statute of limitations is inapplicable to the United States' right to recover under the Act. United States v. Gera, *supra;* United States v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5th Cir. 1967). In this case, the pertinent portion of section 2651(a) gives the United States the right to recover its medical expenses where a person has been injured "under circumstances creating a tort liability upon some third person * * to pay damages therefor * * *." Under the Act, the predicate for United States recovery is made out when there exists a party upon whom tort liability may be fastened. This condition is met in the instant case: the infant was injured under circumstances creating a tort liability in the Housing Authority.

In *Fort Benning, supra,* the court stated that the government's right to recover, though independent, is subrogated to the extent that it is subject to any state defenses which would negate the requirement that there be a

2. The United States is not subject to a state's statute of limitations when suing under the Medical Care Recovery Act.

United States v. Gera, 409 F.2d 117 (3rd Cir. 1969).

tort liability upon some third person. And the *Greene, supra,* court said in dictum that United States recovery may be barred by substantive defenses such as contributory negligence. However, such statements bolster the position of the United States in this suit. Under section 2651(a) the United States may recover only where there is tort liability in a third person. Where the injured party is himself negligent, and where under state law that contributory negligence absolves the third person from liability, then the United States cannot recover from that third person. This is what the statute must mean, and it is to this situation that the language in *Fort Benning* and *Greene* was directed. On the other hand, here the Housing Authority was liable for the infant's injuries, and under state law any possible contributory negligence of the parents was irrelevant to that liability. Thus, the terms of the Act are fully met, and any contributory negligence of the parents can in no way defeat recovery by the United States. It is therefore unnecessary to return the case to the district court for a determination of this issue.

The Housing Authority contends that since, under Washington state law, the parents, if they were contributorily negligent, could not recover for medical expenses furnished by them for the child, then the United States cannot recover either. This argument assumes that the United States is subrogated to the parents' claim, so that it is subject to all defenses against the parents. But as already shown, the government has an independent right to recovery; it is not merely a subrogee. Furthermore, recovery by the parents is forbidden if they are contributorily negligent because otherwise they would profit in spite of their own wrongdoing. However, the United States has been guilty of no wrongdoing, and the policy that excludes recovery by the parents is inapplicable to the United States.

We hold that the United States may properly maintain this suit, and that

contributory negligence of the parents as a defense is not open to the Housing Authority. The parties have stipulated that the reasonable value of the medical care furnished by the United States is $3275.00. All elements of liability under the Medical Care Recovery Act have been established.

The judgment of the district court is reversed, and the cause is remanded to the district court with instructions to enter a judgment in favor of the United States in the sum of $3275.00.