Janice K. TUCKER, By and Through her legal guardians and next friends, Beverly A. EDWARDS and Dean E. Edwards, Plaintiff–Appellant,

v.

Yolanda GORMAN, Defendant–Appellee.

No. 95CA1746.

Colorado Court of Appeals,
Div. II.

March 6, 1997.

Rehearing Denied May 8, 1997.

Certiorari Granted Oct. 20, 1997.

Michael S. Porter, Wheat Ridge, for Plaintiff–Appellant.

Rodman & Ross–Shannon, John R. Rodman, Denver, for Defendant–Appellee.

Opinion by Judge CRISWELL.

Plaintiff, Janice K. Tucker, appeals from the district court's judgment that dismissed her "Medicaid assignment" claim. We reverse and remand for entry of judgment in favor of plaintiff.

Plaintiff was struck by a motor vehicle driven by defendant, Yolanda Gorman. She sustained serious personal injuries and required medical treatment. As a result of her injuries, the Colorado Department of Health Care Policy and Financing made payments on her behalf under the Medicaid program in the amount of $69,222.82. The parties stipulated that such Medicaid payments were necessary, reasonable, and causally related to the accident.

Plaintiff later filed a complaint against defendant asserting claims for negligence, negligence *per se,* and based upon a "Medicaid assignment." The Medicaid assignment claim averred that the State of Colorado had assigned all of its rights and claims for damages it had against defendant under the Col-

orado Medical Assistance Act (CMAA), § 26–4–101, et seq., C.R.S. (1996 Cum.Supp.), to plaintiff and had authorized her to proceed against defendant to recover all amounts expended to pay for her medical expenses. Defendant does not dispute the validity of such assignment. *Cf. Kildahl v. Tagge,* 942 P.2d 1283 (Colo.App.1996).

Prior to trial, plaintiff dismissed all of her personal injury claims without prejudice to the prosecution of the assigned Medicaid claim. Thereafter, in a pre-trial order, the trial court determined that, pursuant to the comparative negligence statute, § 13–21–111, C.R.S. (1987 Repl.Vol. 6A), any party asserting a claim under the CMAA may recover only to the extent that the defendant would be liable to the recipient of the Medicaid payments under that statute. It held that the General Assembly did not intend to allow the government to recover for payments made to a recipient if that recipient could not recover for his or her medical expenses.

As a result of this pre-trial ruling, the parties proceeded to trial on the assigned claim under the parties' stipulation as to all essential elements of the claim, except the relative fault of the parties. A verdict was returned, finding that both plaintiff and defendant had been negligent, that the negligence of each was a cause of plaintiff's injuries, and that defendant was 30% negligent, while plaintiff was 70% negligent.

Pursuant to its pre-trial determination, because of the finding that plaintiff's negligence had been greater than defendant's, the court entered judgment for defendant. Plaintiff appeals from this adverse judgment, asserting that the trial court erred in its interpretation of the CMAA. We agree.

■ The CMAA was enacted to provide medical care to the people of Colorado in conjunction with the federally-funded Medicaid program. *See* § 26–4–102, C.R.S. (1996 Cum.Supp.). To qualify to receive federal funds under that program, a state plan must provide that the administering agency will take reasonable measures to ascertain the legal liability of third parties and to seek reimbursement from such third parties for

any medical assistance paid to recipients. 42 U.S.C. § 1396a(25) (1994).

The Colorado General Assembly has implemented this requirement by the adoption of § 26–4–403, C.R.S. (1996 Cum.Supp.). One provision of that statute, § 26–4–403(3), C.R.S. (1996 Cum.Supp.) provides, in part, as follows:

If medical assistance is furnished to or on behalf of a recipient pursuant to the provisions of this article *for which a third party is liable,* the state department has an enforceable right against such party for the amount of such medical assistance.... *The contributory negligence of the recipient shall not be imputed to the state department.* (emphasis supplied)

Another provision, § 26–4–403(4)(e), C.R.S. (1996 Cum.Supp.) states:

*The state department's right to recover* under this section *is independent of the recipient's right.* The contributory negligence of the recipient shall not be imputed to the state department. (emphasis supplied)

Interpretation of a statute is a question of law, and an appellate court is not bound by the trial court's interpretation. *Colorado Division of Employment & Training, Department of Labor and Employment v. Parkview Episcopal Hospital,* 725 P.2d 787 (Colo.1986).

If the legislative intention is clear, courts must give full force and effect to that intention, *General Electric Co. v. Webco Construction Co.,* 164 Colo. 232, 433 P.2d 760 (1967), and if the language of a statute is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction. *Bloomer v. Board of County Commissioners,* 799 P.2d 942 (Colo.1990).

■ The trial court determined and defendant argues that, because a defendant is not liable to an injured party under the comparative negligence statute unless that defendant is more than 50% at fault, *see* § 13–21–111, the CMAA authorizes recovery by the state only under the same circumstance. We conclude, however, that the CMAA, properly construed, evidences an intent to create an independent right of action in the state which

right cannot be denied because of any negligence of the recipient.

Sections 26–4–403(3) and 26–4–403(4) contain three provisions relevant to the question presented here.

First, they provide that the state has an "enforceable right" to recover the amount of any medical assistance provided "for which a third party is liable."

Second, they note that this right of the state "to recover" is "independent of the recipient's right [to recover]."

Finally, they emphasize that the "contributory negligence" of the recipient "shall not be imputed to the state."

The latter two provisions are specific and unambiguous. They require that the state's right to recover against a third party be considered independently from any right that the recipient might possess against that party and that the negligence of the recipient cannot be imputed to the state.

These statutes are unlike the Workers' Compensation Act, which assigns the claimant's third party claim to the carrier to the extent of the medical and other benefits provided and which results in the carrier's possession of a subrogated claim. There, the subrogated claim is not an independent right of action, and the fault of the claimant will be imputed to the subrogee carrier because that carrier stands in the claimant's shoes. *See* § 8–41–203(1), C.R.S. (1996 Cum.Supp.); *Martinez v. St. Joseph Hospital & Nursing Home of Del Norte, Inc.*, 878 P.2d 13 (Colo. App.1993).

Here, in contrast, the statutes expressly disclaim any intent by the General Assembly that the state's right to recover is to be tested by the recipient's right to recover. Hence, these two provisions, considered on their face, prevent the application of the comparative negligence statute to the state's claim, at least to the extent that the application of that statute would result in denying any recovery to the state, based upon the recipient's negligence.

Defendant argues, however, that the third provision, which creates an enforceable right in the state only in those instances in which "a third party is liable" for the medical assistance provided, requires a determination that a third party is liable *to the recipient* before any right enforceable by the state is to be recognized. For several reasons, we disagree.

First, the provision in question is both introductory and general. It is intended to apply in numerous instances, including those in which the liability of the third party is to the medical provider, rather than to the recipient of the medical assistance. A typical example results from the common law liability of a parent for medical assistance provided to a child. *Compare Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990) (no-fault act did not abrogate doctrine of parental immunity) *with Poudre Valley Hospital District v. Heckart*, 491 P.2d 984 (Colo.App.1971) (not selected for official publication) (until emancipation, parent has common law duty to provide medical care to child). Hence, it cannot be said that the word "liable" necessarily and always refers to the liability owed to the recipient.

Second, this introductory sentence does not purport to establish substantive criteria for the imposition of liability upon any third party. While it generally requires that the third party be "liable" as a condition precedent to the right of the state to recover, it leaves to other statutes or to common law principles the determination of the existence of any such liability. In contrast, the directives that the state possesses an "independent" right of action and that recipient's negligence shall not be "imputed" to the state establish specific, substantive criteria to be applied in determining the third party's liability to the state.

Under these circumstances, to the extent that there may be some perceived conflict between the first sentence of § 24–4–403(3) and the remainder of that statute and § 24–4–403(4)(e), the latter provisions must prevail. *See M.S. v. People*, 812 P.2d 632 (Colo. 1991) (statute requiring consideration of ability to pay of parents of developmentally disabled child prevails over general statute requiring parents to be liable for entire cost of child committed to state institution).

We conclude, therefore, that, in proceedings to determine the liability of any third

party for Medicaid assistance provided to a recipient, the state's claim cannot be defeated by establishing that the recipient's negligence contributed to the need for medical assistance, irrespective of the extent of such negligence. Hence, in an action by the state, such as that here, in which the state's claim is based upon an allegation of negligence, § 24–4–403(3) and § 24–4–403(4)(e) prevent the recipient's negligence from barring the third party's liability under § 13–21–111.

In reaching this conclusion, we have considered the court decisions from other jurisdictions to which the parties have referred us. In each of those cases, however, the statute being interpreted differed substantially from the statutory language at issue here. Those decisions interpreted statutes, like Colorado's Workers' Compensation Act, which cause the providing agency to be *subrogated* to the recipient's claim. *See, e.g.,* 42 U.S.C. § 2651(a)(1994), which provides that the federal government "shall be subrogated to any right or claim" possessed by any recipient receiving medical care from a federal facility. Yet, even under this statute, some courts have held that the government may be entitled to recover from a tortfeasor even though the recipient would be unable to do so. *See United States v. Moore,* 469 F.2d 788 (3d Cir.1972) (claim not barred by state's immunity statute); *United States v. Theriaque,* 674 F.Supp. 395 (D.Mass.1987) (comparative negligence of recipient no bar to claim); *United States v. Winter,* 275 F.Supp. 895 (E.D.Pa.1967) (recipient cannot release government's claim).

While we recognize that the General Assembly may well have gone beyond the requirements of federal law in enacting § 26–4–403(3) and § 26–4–403(4), we know of no reason that would prevent that body from doing so. And, quite aside from any federal law requirements, we conclude that the pertinent state statutes as they presently exist compel our conclusion here.

■ However, our conclusion that the negligence of the recipient cannot *defeat* the state's claim does not lead to the further conclusion that such negligence can play *no* part in determining the extent of the third party's liability. On the contrary, so long as such negligence is not "imputed" to the state,

as the statute prohibits, it is a valid consideration in determining that claim.

In this respect, § 13–21–111.5(1), C.R.S. (1987 Repl.Vol. 6A) specifically limits the liability of any defendant to an amount no "greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant...." Hence, under this statute, the negligence of a nonparty may be considered in determining the extent of the defendant's liability, although the negligence of such a party is not imputed to the plaintiff. *See* § 13–21–111.5(3)(b), C.R.S. (1996 Cum.Supp.).

The CMAA requires the state to be treated as a party separate and independent from the recipient; the latter's negligence cannot be "imputed" to the state so as to deny its claim. However, this does not prevent the recipient's negligence from being considered in determining the degree or percentage of the defendant's fault. And, because such consideration for this purpose does not involve imputing the recipient's negligence to the state, its consideration for this purpose is not prohibited by § 26–4–403.

Here, because the recipient was the assignee of the state's claim and the court concluded that her negligence could be imputed to the state, the issue of the percentage of her contributory negligence, as compared to that of defendant, was submitted to and determined by the jury. By its verdict, the jury determined defendant to be 30% at fault. While the CMAA prohibits the percentage of the recipient's negligence from being used to defeat the state's claim under § 13–21–111(1), it does not prevent application of § 13–21–111.5; therefore, defendant is liable for only 30% of the state's expenditures. Hence, upon remand, a judgment in that amount should be entered.

The judgment of the district court is reversed, and the cause is remanded to the trial court for entry of a judgment for plaintiff in accordance with the views expressed in this opinion.

PLANK and KAPELKE, JJ., concur.